[Cite as *State v. Sims*, 2019-Ohio-4975.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 107724 |
| DWAYNE SIMS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** December 5, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-616120-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, *for appellee.*

Richard E. Hackerd, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Dwayne Sims ("Sims"), appeals his convictions

and sentence following his mid-trial guilty plea. Sims's assigned appellate counsel

filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d

493 (1967), and now seeks leave to withdraw as appellate counsel. After thoroughly reviewing the record, we grant counsel's motion to withdraw and dismiss the appeal.

## Procedural History and Facts

{¶ 2} On April 25, 2017, a grand jury returned a 30-count indictment charging Sims, along with four codefendants, with aggravated murder, murder, aggravated robbery, aggravated burglary, felonious assault, kidnapping, and having weapons while under disability.[1] The charges resulted from the October 2016 execution-styled killing of Melissa Brinker, a bartender at the Cooley Lounge, and the robbery of several patrons of the lounge.

{¶ 3} In June 2018, following numerous pretrials, Sims filed a motion to suppress. After a hearing, the trial court denied the motion, and a joint jury trial commenced the same day.

{¶ 4} At trial, the state presented 22 witnesses, including 13 police officers, four patrons of the Cooley Lounge, and four medical examiners. After approximately one week of testimony, in the middle of trial, Sims withdrew his previously entered not guilty pleas, and proceeded to plead guilty to two amended counts of aggravated robbery, one with a three-year firearm specification attached.

{¶ 5} In August 2018, the trial court sentenced Sims to 11 years on the first count of aggravated robbery and three years for the attached firearm specification. The trial court sentenced Sims to ten years on the second count of aggravated

---

[1] With the exception of the charges for having weapons while under disability, all counts had one- and three-year firearm specifications attached.

robbery and ordered both sentences to be served concurrently for a total of 14 years in prison.

{¶ 6} In September 2018, Sims filed his notice of appeal. Based on the belief that no prejudicial error occurred below and that any grounds for appeal would be frivolous, Sims's assigned appellate counsel filed a motion to withdraw under *Anders*. Sims has had the opportunity to file his own merit brief, but has not done so.

## *Anders* Standard

{¶ 7} *Anders* outlines the procedure that counsel must follow to withdraw because of the lack of any meritorious grounds for appeal. In *Anders*, the United States Supreme Court held that if appointed counsel, after a conscientious examination of the case, determines the appeal to be wholly frivolous, he or she should advise the court of that fact and request permission to withdraw. *Anders*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* Counsel must also furnish the client with a copy of the brief, and allow the client sufficient time to file his or her own brief, pro se. *Id.*

{¶ 8} Once appellate counsel satisfies these requirements, this court must fully examine the proceedings below to determine if any arguably meritorious issues exist. *Id.*; former Loc.App.R. 16(C). If we determine that the appeal is wholly frivolous, we may grant counsel's request to withdraw and dismiss the appeal

without violating constitutional requirements, or we may proceed to a decision on the merits if state law so requires. *Anders* at 744; former Loc.App.R. 16(C).

{¶ 9} On February 1, 2019, Loc.App.R. 16(C), which previously set forth the procedure governing *Anders* briefs and motions to withdraw, was amended and no longer includes any procedure regarding *Anders* briefs. Notwithstanding our recent amendment of Loc.App.R. 16(C), this court has addressed the duties of appellate counsel when filing an *Anders* brief and our duties when ruling on counsel's motion to withdraw on the grounds that the appeal would be frivolous. *See State v. Richardson*, 8th Dist. Cuyahoga No. 104958, 2017-Ohio-4441; *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978). Thus, the absence of a local rule governing *Anders* briefs does not prevent this court from accepting these briefs nor from following the procedure the United States Supreme Court outlined in *Anders*.

{¶ 10} We note that the Fourth Appellate District, in *State v. Wilson*, 2017-Ohio-5772, 83 N.E.3d 942 (4th Dist.), adopted a new procedure of no longer accepting motions to withdraw pursuant to *Anders*. In reaching its decision in *Wilson*, the Fourth District cited several criticisms of the procedure outlined in *Anders* and stressed that the procedure is a constitutional safeguard, but not a constitutional requirement. *Wilson* at ¶ 23; *State v. Gillian*, 4th Dist. Gallia No. 16CA11, 2017-Ohio-7386 (following *Wilson*).

{¶ 11} In *State v. Cruz-Ramos*, 2018-Ohio-1583, 125 N.E.3d 193, ¶ 14-17 (7th Dist.), the Seventh Appellate District agreed with *Wilson* and held that it was no longer acceptable for counsel to file an *Anders* brief, which means counsel may

no longer file a motion to withdraw on the grounds that the appeal is frivolous. Also, in *State v. Wenner*, 2018-Ohio-2590, 114 N.E.3d 800 (6th Dist.), the Sixth Appellate District adopted the holding in *Wilson* and declared that the court will no longer accept motions to withdraw or briefs filed pursuant to *Anders*.

{¶ 12} However, not all appellate districts are in agreement with *Wilson*. In *State v. Lawrence*, 2018-Ohio-3987, 121 N.E.3d 1 (12th Dist.), the Twelfth Appellate District observed that "the Fourth District's position is not without criticism." *Id.* at ¶ 14. In declining to adopt *Wilson's* holding, the Twelfth Appellate District stated it will continue to accept *Anders* briefs because they are appropriate in certain situations. *Id.* at ¶ 33-36. The Eleventh Appellate District recognized the divide between our sister districts on a suitable approach, but noted, "nevertheless, [it is] the precedent of this district and most others in Ohio, to follow the procedure outlined in *Anders*." *In re. A.J.F.*, 2018-Ohio-1208, 110 N.E.3d 42, ¶ 24 (11th Dist.), fn. 1.

{¶ 13} Interestingly, in *Gillian*, the dissent highlighted this divide stating:

I respectfully dissent and note I was not on the panel in [*Wilson.*] While I recognize that the *Anders* process used in Ohio may not be perfect, I believe a better approach, if change is warranted, would have been to seek rule changes at the Ohio Supreme Court because of the constitutional and ethical harmonics at play. This approach allows any stakeholders involved to have input via the public comment period if they so desire and assists in the interests of judicial economy.

Now, I encourage my colleagues to certify a conflict. My hope is the Ohio Supreme Court expeditiously resolves this split among Ohio Courts of Appeals as to the application of *Anders* and provides guidelines for Ohio attorneys and judges alike in this important area of the law.

*Gillian*, 4th Dist. Gallia No. 16CA11, 2017-Ohio-7386, at ¶ 10-11.

{¶ 14} We acknowledge the split and appreciate that there may be genuine criticisms of the *Anders* approach. However, until the Ohio Supreme Court resolves the split among the Ohio Appellate Districts regarding the application of *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, we decline to adopt the reasoning of the Fourth Appellate District. As a result, we will continue to adhere to the procedures outlined in *Anders* pertaining to both counsel and the court when appointed appellate counsel files a motion to withdraw because an appeal would be wholly frivolous.

{¶ 15} In the instant case, appointed appellate counsel complied with the requirements of *Anders*. Sims did not file a pro se brief.

### Potential Issues for Review Under *Anders*

{¶ 16} Sims's appointed counsel, possessing 28 years of experience representing criminal defendants in both trial and appellate practice, reviewed the voluminous record, containing over 3,000 pages, and concluded he could not make any meritorious arguments on Sims's behalf. Nevertheless, counsel presents the following potential issues for our *Anders* review: (1) the trial court could have sustained Sims's motion to suppress, and (2) that his plea hearing failed to comply with Crim.R. 11.

{¶ 17} First, as it relates to the potential issue that the trial court could have sustained the motion to suppress, the record indicates that Sims argued in his motion that he was not at the scene of the robbery that turned fatal. Thus, the

eyewitness identification by codefendant, Garry Lake, who cooperated with the state, should have been suppressed. We agree with appointed counsel that there would be no merit in raising this issue.

{¶ 18} A guilty plea is a complete admission of the facts set forth in the indictment. *State v. Colon*, 2017-Ohio-8478, 99 N.E.3d 1197 (8th Dist.), citing *State v. Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 7 (2d Dist.); *State v. Stumpf*, 32 Ohio St.3d 95, 104, 512 N.E.2d 598 (1987); Crim.R. 11(B)(1). Therefore, a defendant who pleads guilty may only attack the voluntary, knowing, and intelligent nature of the plea on appeal. *Id.* at ¶ 15, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992); *State v. Gaston*, 8th Dist. Cuyahoga No. 92242, 2009-Ohio-3080, ¶ 7.

{¶ 19} Here, as previously noted, in the middle of trial and after one week of testimony, Sims plead guilty to two counts of aggravated robbery, thereby admitting that he was present at the lounge and participated in the robbery. As a result, it would not have been worthwhile to raise this argument.

{¶ 20} Second, as it relates to the potential issue that the trial court did not comply with Crim.R. 11, we also agree with appointed counsel that there would be no merit to raising this issue.

{¶ 21} When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution. *State v. Veney*, 120 Ohio St.3d 176, 2008-

Ohio-5200, 897 N.E.2d 621, ¶ 7.  In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we first review the record to determine whether the trial court complied with Crim.R. 11(C).  *State v. Davner*, 2017-Ohio-8862, 100 N.E.3d 1247, ¶ 41 (8th Dist.).

{¶ 22} Crim.R. 11(C) sets forth certain constitutional and procedural requirements with which a trial court must comply prior to accepting a guilty plea. Under Crim.R. 11(C)(2), the trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 23} The purpose of Crim.R. 11(C)(2) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty.  *State v. Albright*, 8th Dist. Cuyahoga No. 107632, 2019-Ohio-1998, citing *State v. Woodall*, 8th Dist. Cuyahoga No. 102823, 2016-Ohio-294, ¶ 12. Whether the trial court accepted a plea in compliance with Crim.R. 11(C)(2) is

subject to de novo review, based on the totality of the circumstances. *See, e.g., State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6; *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 6.

{¶ 24} In the instant case, appellate counsel submitted a brief in support that outlined the trial court's complete compliance with Crim.R. 11 during the plea colloquy. Our review reveals the trial court began by inquiring about Sims's educational level, and Sims indicated he had graduated from high school and had attended college.

{¶ 25} Next, the trial court inquired if Sims was a United States citizen and he answered in the affirmative; inquired whether he had consumed any drugs, alcohol, or medication within the last 24 hours, Sims responded he had not; inquired if he had failed to take any prescribed medication and Sims's response was "no"; inquired if he suffered from any mental or physical disability and Sims's response was "no"; and inquired if he was thinking clearly and Sims indicated he was.

{¶ 26} The trial court went on to inquire whether Sims was currently on supervision in any jurisdiction for probation, community control sanctions, parole, or postrelease control, and Sims indicated he was not. The trial court inquired whether Sims had been threatened, or if he was promised anything special as an inducement to plead guilty. In both instances, Sims answered in the negative.

{¶ 27} Further, the trial court inquired whether Sims was voluntarily entering into the plea and if he had taken sufficient time to confer with his attorneys. In both instances, Sims answered in the affirmative. The trial court then inquired if

Sims understood that if he plead guilty to the charges it could proceed to sentence in accordance with the law. Sims indicated he understood.

{¶ 28} Thereafter, the trial court thoroughly explained to Sims his constitutional rights and the rights he would be waiving by pleading guilty to the charged offenses. In each instance, Sims signaled his understanding and at no point did he ask any questions or give any indication that he did not understand the questions asked or any of the trial court's advisements.

{¶ 29} Finally, the trial court reviewed the nature of the charges and the maximum penalties involved. The trial court advised Sims that he would be subject to postrelease control for a mandatory period of five years and advised him of the maximum penalty for violating postrelease control.

{¶ 30} After the aforementioned inquiries, advisements, and reviews, Sims entered the guilty pleas. The trial court found that Sims made a knowing, intelligent, and voluntary decision to withdraw his previous not-guilty pleas. The trial court further found that Sims understood the nature of the charges, the effect of the guilty pleas, and the maximum penalties involved. Sims's defense counsel then indicated that he was satisfied that the trial court had fully complied with Crim.R. 11.

{¶ 31} Based on the foregoing, we find that the trial court conducted a detailed and thorough plea colloquy prior to accepting Sims's pleas. The totality of the circumstances also indicates that Sims subjectively understood the implication of his guilty pleas and the maximum penalties he could receive based on his pleas. As a result, it would not have been worthwhile to raise this argument.

{¶ 32} Following our independent review of the entire record, we find that no meritorious arguments exist and that an appeal would be wholly frivolous. Appellate counsel's request to withdraw is granted, and the appeal is dismissed.

{¶ 33} Appeal dismissed.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., CONCURS WITH SEPARATE OPINION;
MARY J. BOYLE, J., DISSENTS WITH SEPARATE OPINION

MICHELLE J. SHEEHAN, J., CONCURRING:

{¶ 34} While I concur with the majority, I recognize the numerous issues raised in the well-reasoned dissent with regard to *Anders* briefs. As identified by the majority and the dissent in this case, as well as the extensive case law concerning *Anders* briefs in other districts, there are advantages and disadvantages to accepting *Anders* briefs. One thing everyone can agree on, however, is that the overriding priority in our *Anders* discussions is safeguarding a defendant's Fourteenth Amendment right to appellate counsel. And until the Ohio Supreme Court addresses a uniform procedure for addressing *Anders* issues, what constitutes the

proper manner in which to ensure a defendant's right to appellate counsel will vary depending on which appellate district reviews the appeal in Ohio.

{¶ 35} Most states apply their own unique procedure.  While no one appears to have the perfect solution, perhaps a procedure whereby a two- or three-tier attorney review in lieu of compelling the court to become an advocate provides transparency and ensures equal justice to indigent defendants.  Whether particular assignments of error should be identified, at least initially, should be considered in an attempt to avoid the potential prejudice raised by the dissent.  Until a uniform procedure is adopted in Ohio that adequately addresses the indigent defendant's right to appellate counsel, compelling appointed counsel to create an issue for appeal potentially compromises an indigent's right to effective appellate counsel, creates ethical concerns for appointed counsel, and risks the defendant waiving potential errors on direct appeal.

{¶ 36} I therefore concur with the majority opinion.


MARY J. BOYLE, J., DISSENTING:

{¶ 37} I respectfully dissent.  It is my view that to better protect indigent defendants' constitutional rights — due process, equal protection, and right to counsel — this court should no longer accept briefs pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.

## *Anders*, the Constitution, and Other U.S. Supreme Court Cases

{¶ 38} The Fourteenth Amendment to the U.S. Constitution states that a person cannot be deprived of his or her life or liberty without due process of law and ensures that a criminal defendant receive basic procedural safeguards. The Fourteenth Amendment also ensures that all persons receive equal protection under the law. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." It is these constitutional protections that provide the backdrop for the issues presented in this case.

{¶ 39} It is well settled that persons convicted of a crime do not possess a constitutional right to appeal. *Ross v. Moffitt*, 417 U.S. 600, 606, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). But when states give convicted criminals a statutory right to appeal their convictions (a first appeal "as a matter of right"), state appellate procedures must comply with the Fourteenth Amendment's guarantee of equal protection and due process of the law. *Douglas v. California*, 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). All 50 states provide for the statutory right to a first appeal. *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The *Douglas* court explained that "where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." *Id.* at 357. In *Griffin*, the U.S. Supreme Court stated that "[b]oth equal protection and due process

emphasize the central aim of our entire judicial system — all people charged with [a] crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" *Id.* at 17, quoting *Chambers v. Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940). Therefore, it is long established that an indigent defendant has the same right to effective representation in a first appeal as a matter of right as a defendant who can afford to retain counsel of his or her choice.

{¶ 40} At the trial level, defense counsel's views of the merits of a client's case never give rise to a duty to withdraw. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 435, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). This is because persons accused of a crime are protected by the presumption of innocence until they are convicted. Once convicted, however, defendants are no longer protected by this presumption. Therefore, if convicted defendants elect to appeal, they bear the burden of convincing an appellate court that reversible error occurred at trial. Appellate counsel for a convicted defendant must assert specific grounds for reversal. In so doing, however, counsel may not ignore his or her professional obligations. No attorney, whether appointed or paid, "[can] deliberately mislead [a] court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments." *Id.* at 436.

{¶ 41} Over six decades ago, the U.S. Supreme Court recognized the ethical conundrum facing appointed appellate counsel, stating:

> If [appointed] counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he [or she] may ask to withdraw on that account. If the court is satisfied that counsel has diligently

> investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied.

*Ellis v. United States*, 356 U.S. 674, 675, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

{¶ 42} The U.S. Supreme Court reaffirmed this principle in *Anders*. The *Anders* court held that the "principle of substantial equality is not compromised when appointed counsel files a 'no merit' brief even though such briefs are seldom, if ever, filed by retained counsel." *McCoy* at 438, quoting *Anders,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. This is because "absolute equality is not required" under the Fourteenth Amendment, only "substantial equality." *Id.* Indeed, the "central teaching of *Anders*" is that the principles of "substantial equality" require appointed counsel to make the same diligent and thorough evaluation of a case as a retained lawyer. *Id.* In doing so, an appellate lawyer "must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal." *Id.* "Only after such an evaluation has led counsel to the conclusion that the appeal is 'wholly frivolous' is counsel justified in making a motion to withdraw." *Id.* at 438-439, quoting *Anders*.

{¶ 43} The question presented in *Anders* was: "'May a [s]tate appellate court refuse to provide counsel to brief and argue an indigent criminal defendant's first appeal as of right on the basis of a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief?'" *McCoy*, 486 U.S. at 439, 108 S. Ct. 1895, 100 L.E.2d 440, fn. 11, quoting Brief for Petitioner in *Anders*. The *Anders* court answered "no" to that question. *Id.*, citing *Anders* at 744.

{¶ 44} The U.S. Supreme Court concluded the following in *Anders*:

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished [to] the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal — as nearly as is practicable — as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel.

*Id.* at 744-745.

{¶ 45} Thirty-three years later, the U.S. Supreme Court recognized that the procedures set forth in *Anders* have, "from the beginning, faced 'consistent and severe criticism.'" *Smith v. Robbins*, 528 U.S. 259, 281, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), quoting *In re Sade C.*, 13 Cal.4th 952, 55 Cal.Rptr.2d 771, 920 P.2d 716 (1996). The *Robbins* court noted that "[o]ne of the most consistent criticisms" of *Anders* is the "tension" between appellate counsels' ethical duty as officers of the court to not present frivolous arguments with their duty to further their client's interests, which might not permit them to characterize their client's claims as frivolous. As one of the dissenting justices noted, "[w]hen a lawyer's corresponding obligations are at odds with each other, there is no perfect place to draw the line between them." *Id.* at 292 (Souter, J., dissenting).

{¶ 46} The *Robbins* court made clear, however, that the procedures set forth in *Anders* regarding appointed counsel's obligations in a "wholly frivolous" appeal were not mandatory on the states. *Id.* at 272. The court stated that the *Anders* procedure was not "'an independent constitutional command,'" but rather "just 'a prophylactic framework.'"[2] *Robbins* at 273, quoting *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The *Robbins* court explained that

> any view of the procedure we described in the last section of *Anders*
> that converted it from a suggestion into a straitjacket would contravene
> our established practice, rooted in federalism, of allowing the [s]tates
> wide discretion, subject to the minimum requirements of the

---

[2] The common dictionary definition of "prophylactic" means to "defend against" or "prevent something." *The American Heritage Dictionary* 674 (4th Ed.2001). Black's Law Dictionary states that "prophylactic" is an adjective meaning "formulated to prevent something." *Black's Law Dictionary* 1338 (9th Ed.2009). Prevention is the core of the legal definition of the term "prophylactic."

Fourteenth Amendment, to experiment with solutions to difficult problems of policy.

*Id.*

{¶ 47} The *Robbins* court concluded "that the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may — and, we are confident, will — craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*. The Constitution erects no barrier to their doing so." *Robbins* at 276.

## Former Loc.R. 16(C)

{¶ 48} In 2014, this court promulgated former Loc.R. 16(C) setting forth our *Anders* procedures, which essentially followed the contours of the *Anders* decision. It provided the following:

> If appellant's counsel in a criminal appeal files a no merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), counsel shall also file a separate motion requesting leave to withdraw in compliance with Loc.App.R. 44(B). Counsel shall serve both a copy of the motion to withdraw and the *Anders* brief upon appellant as well as any further court orders that are issued in the appeal unless and until the motion to withdraw is granted.
>
> Upon the filing of an *Anders* brief, the court will either grant appellant leave to file a pro se brief and assignment of error that comports with the appellate rules and local appellate rules within 45 days or, in its discretion, the court may assign new counsel. The order will also inform appellant that the court will independently examine the record regardless of whether such a brief is filed.
>
> If the appellant files a pro se brief, the appellee may respond and the appellant may reply as provided by the appellate rules and local appellate rules. Once briefing is complete, or the 45-day period for filing a pro se brief has lapsed without a brief being filed, the appeal and the motion to withdraw will be assigned to a merit panel for review. The panel will conduct an independent examination of the record to

determine if it discloses an issue of arguable merit prejudicial to the appellant. The appeal will be considered submitted on the briefs unless the court sua sponte sets an oral argument date.

{¶ 49} Despite having this local rule, which explicitly stated that we should "conduct an independent examination of the record," a three-judge panel of this court subsequently held that the "independent examination" be limited to those issues that appellate counsel raised in the *Anders* brief. *State v. Taylor*, 8th Dist. Cuyahoga No. 101368, 2015-Ohio-420, ¶ 20.[3] *Taylor* also required appellant's counsel to include a discussion of why issues of arguable merit were wholly frivolous. *Id.* at ¶ 9.

{¶ 50} Effective February 1, 2019, this court amended Loc.R. 16 to essentially delete subsection (C) regarding *Anders*. Before we did, we notified the public that we were eliminating *Anders* procedures and sought comments on the change. We explained that we were doing so for the following reason:

> Based on emerging case law from other Ohio appellate districts that are no longer accepting *Anders* briefs (as well as the issues raised in dissenting opinions of *State v. Upkins*, 3d Dist. Shelby No. 17-13-02, 2013-Ohio-3986 and *State v. Bowshier*, [154] Ohio St.3d [39], 2018-Ohio-2150, the provision for *Anders* briefs has been eliminated.

### **Reconsidering the Acceptance of *Anders* Briefs**

{¶ 51} In 2017, the Fourth Appellate District reconsidered its approach to cases where appointed counsel believed that there are no meritorious grounds for appeal. *See Wilson*, 2017-Ohio-5772, 83 N.E.3d 942 (4th Dist.). The Fourth District

---

[3] The author never followed *Taylor's* directive and always conducted a thorough review of the entire record to ensure that appointed counsel was effective and that defendant's constitutional and appellate rights were protected.

noted that after *Robbins*, it was clear that the *Anders* procedure was not a "constitutional mandate" and only provided "minimum safeguards" for a convicted criminal. *Id.* at ¶ 9, 34. The Fourth District discussed common criticisms of the *Anders* procedure at length, including (1) prejudice to the client in the first appeal as well as possible collateral attacks, (2) appointed counsel's conflicting duties to zealously represent his or her client versus being candid with the court, (3) forcing the court to act as an advocate by scouring the record for meritorious issues, (4) imposing heavy burdens on the judiciary, and (5) lack of uniformity across the country and in this state. *See Wilson* at ¶ 10-22.

{¶ 52} The Fourth District further discussed how states have "modified the requirements" of *Anders* in an attempt to address some of the issues associated with the procedure and have determined that these requirements do not permit counsel to withdraw. *Id.* at ¶ 12. For example, California requires appointed counsel to provide a brief that sets forth the "procedural and factual history of the case with citations to the record, attests that counsel has reviewed the record, discussed it with and provided it to the client, and informed the client of the right to file a pro se supplemental brief." *Id.* Appointed counsel then asks the court to independently review the record for arguable issues but does not expressly state that the appeal is frivolous or ask to withdraw. *Id.*, citing *People v. Wende*, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979). Oregon has a procedure similar to California's procedure, "but instead of permitting the client to submit a pro se brief with purportedly frivolous issues, counsel prepares a 'Part A' section of the brief * * * and

a 'Part B' arguing the merits of the purportedly frivolous issues on behalf of the client. Counsel signs Part A and the client signs Part B." *Id.*, citing *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991).

{¶ 53} The Fourth District ultimately adopted the "Idaho Rule," which long ago prohibited appointed counsel from filing an *Anders* brief or withdrawing from a case. *Id.* at ¶ 14, 23, citing *State v. McKenney*, 98 Idaho 551, 568 P.2d 1213 (1977).[4] The Idaho Supreme Court reasoned that the *Anders* procedures were dictum, "impractical and illogical," and presented "minimal constitutional safeguards for a criminal defendant upon appeal." *McKenney* at 552-553. The *McKenney* court explained that the *Anders* procedure can only result in prejudice to the indigent defendant. *Id.* at 552. It further noted that even if an appeal is "wholly frivolous, undoubtedly, less of counsel and the judiciary's time and energy will be expended in directly considering the merits of the case in its regular and due course as contrasted with [the] fragmented" *Anders* procedure. *Id.* One judge described the superiority of the "Idaho Rule" a few years later, stating that "even for appeals that turn out to be frivolous, adversary procedure is much to be preferred over a process in which the appellate judge feels obliged to act as a lawyer and the appellate lawyer feels constrained to rule as a judge." *Gale v. United States*, 429 A.2d 177, 178-183

---

[4] In a later decision by the Fourth District, one judge dissented and stated that he was not on the panel in *Wilson*. *See Gillian*, 4th Dist. Gallia No. 16CA11, 2017-Ohio-7386, at ¶ 11 (McFarland, J., dissenting). This judge indicated that he believed that a "better approach" to changing *Anders* procedures would have been to seek "rule changes at the Ohio Supreme Court." *Id.* at ¶ 10. He further urged his colleagues on the Fourth District to certify a conflict to the Ohio Supreme Court. *Id.* at ¶ 11.

(D.C.Cir. 1981) (Ferren, J., dissenting), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207, (1981).

{¶ 54} The Seventh District followed the reasoning of *Wilson,* 2017-Ohio-5772, 83 N.E.3d 492 (4th Dist.) and no longer accepts *Anders* briefs. *See Cruz-Ramos*, 2018-Ohio-1583, 125 N.E.3d 193, at ¶ 16 (7th Dist.). In doing so, the Seventh District also focused on the many criticisms of *Anders* procedures. *See id.* at ¶ 7-12. Notably, the Seventh District explicitly rejected what it referred to as "the Eighth District approach" set forth in *Taylor*, which again held that this court's independent review should only consist of reviewing the issues raised in an *Anders* brief. *Id.* at ¶ 13, citing *Taylor*, 8th Dist. Cuyahoga No. 101368, 2015-Ohio-420. The Seventh District found that "the Eighth District approach" essentially provides "no review at all" and is contrary to the intent of *Anders*. *Id.*

{¶ 55} In following *Wilson* and adopting the "Idaho Rule," the Seventh District concluded:

> Typically, trial counsel has filed the appeal rather than appointed appellate counsel. Therefore, it is imperative that appellate counsel discuss the case with the defendant and decide whether to continue the appeal based on counsel's examination of the case. If counsel believes the appeal is frivolous, counsel should inform the defendant and explain why the appeal should be abandoned. If the defendant decides that there are specific issues that he or she wishes to raise on appeal, counsel must file a merit brief and argue the defendant's appeal as persuasively as possible regardless of any personal belief that the appeal is frivolous. This does not mean counsel must argue every issue the defendant believes meritorious. Counsel, as has always been the case, may exercise strategic judgment in the presentation of the issues in the brief. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). We believe that requiring counsel to file a merit

brief is "simpler, more effective, fairer, and less taxing on counsel and the courts." *Id.* at ¶ 18.

*Cruz-Ramos* at ¶ 15.

{¶ 56} In 2016, the Ohio Supreme Court accepted discretionary review of *Upkins*, 3d Dist. Shelby No. 17-13-02, 2013-Ohio-3986, on the following proposition of law: "When appellate counsel also served as trial counsel and moves to withdraw pursuant to *Anders v. California*, the court shall permit counsel to withdraw and must then appoint new appellate counsel to review the record and raise any nonfrivolous appealable issue." The Supreme Court ultimately dismissed the appeal in 2018 as being improvidently accepted. *State v. Upkins*, 154 Ohio St.3d 30, 2018-Ohio-1812. One justice, however, dissented, stating that "[t]here are a number of problems regarding *Anders* briefs in this state that should be resolved by this court, and this case presents an opportunity to resolve several of those problems." *Id.* at ¶ 2 (Fischer, J., dissenting) ("the *Upkins* dissent"). The *Upkins* dissent further noted that the appeal should not be dismissed because "there appears to be a conflict among the appellate courts" regarding whether to continue accepting *Anders* briefs. *Id.* at ¶ 24.

{¶ 57} The *Upkins* dissent also reviewed how other districts and states handle *Anders* briefs, highlighting the pervasive criticisms of *Anders* procedures. The *Upkins* dissent explained that "*Anders* has received far from universal approval," and noted that 16 states do not allow appointed counsel to file *Anders* briefs. *Id.* at ¶ 17.

{¶ 58} One section of the *Upkins* dissent is especially notable, pointing out that "*Anders* briefs have proved a less-than-effective method to determine whether a defendant has meritorious claims on appeal." *Id.* at ¶ 19. The dissenting justice explained that "[i]n Ohio, there are many examples of defense counsel filing *Anders* briefs that were later rejected by appellate courts because there were nonfrivolous issues for appeal." *Id.* "Indeed, there are multiple examples of trial courts being reversed on one issue or another after *Anders* briefs were filed but rejected. In other words, not only were the appeals not wholly frivolous, as required for the submission of an *Anders* brief, but assignments of error were eventually sustained." *Id.* (setting forth numerous examples).

{¶ 59} The *Upkins* dissent did not go as far as to opine that Ohio should not allow appointed counsel to file *Anders* briefs, but the justice did express that he had "doubts regarding *Anders* briefs" and said that he believed the Supreme Court should address the issues "sooner rather than later." *Id.* at ¶ 29-30.

## Elimination of *Anders* Briefs

{¶ 60} After much reflection, it is my view that this court should no longer permit appointed counsel to file an *Anders* brief or withdraw from a case. Simply put, I share the same practical concerns expressed in both *Wilson* and the *Upkins* dissent. And although I agree that *Anders* procedures present many issues, it is my view that the most troubling aspect is the prejudice it causes an indigent defendant convicted of a serious crime. When appellate counsel files an *Anders* brief saying, "My client should lose," appellate counsel undoubtedly prejudices his or her client.

**{¶ 61}** "'The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.'" *McCoy*, 486 U.S. at 445, 108 S.Ct. 1895, 100 L.Ed.2d 440, quoting *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Defense attorneys have an "'overarching duty'" to "advanc[e] 'the undivided interests'" of their clients. *McCoy* at 445-446, quoting *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Polk Cty. v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). "Our commitment to the adversarial process, we have repeatedly recognized, is every bit as crucial on appeal of a criminal conviction as it is at trial." *McCoy* at 446, citing *Douglas*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. At trial or on appeal, the Constitution guarantees an indigent defendant '"an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim."' *Id.*, quoting *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

**{¶ 62}** As the dissenting justice in *Upkins*, 154 Ohio St.3d 30, 2018-Ohio-1812, explained:

> Under *Anders*, the appellate court must complete an independent review of the record and then appoint counsel to argue that appeal if the court finds that a claim of arguable merit exists. This procedure places the court in the role of both advocate and adjudicator. In Ohio, how can a judge who has reviewed a record and identified issues of arguable merit then rule on the actual merits of the claims he or she previously identified without there being an appearance of impropriety, which is barred by the rules of judicial ethics? *See* Canon 1 of the Ohio Code of Judicial Conduct.

*Id.* at ¶ 10.

**{¶ 63}** Justice Souter also recognized the importance of this adversarial distinction in his dissent in *Robbins,* stating, "Appellate counsel examines the trial record with an advocate's eye, identifying and weighing potential issues for appeal. This is review not by a dispassionate legal mind but by a committed representative, pledged to his client's interests, primed to attack the conviction on any ground the record may reveal." *Robbins,* 528 U.S. at 293, 120 S.Ct. 746, 145 L.Ed.2d 756 (Souter, J., dissenting).

**{¶ 64}** By not allowing *Anders* briefs, it is my view that appointed counsel will rarely, if ever, face ethical problems by filing a merit brief for an indigent defendant. If counsel is appointed, then he or she will be representing a defendant on appeal who faces a serious loss of liberty in his or her only direct attack on those convictions. Indeed, the defendant will be facing dire consequences — for even a short time in prison is a monumental loss of liberty.

**{¶ 65}** It is my view that the Model Rules of Professional Conduct, which Ohio has adopted, support the argument that appointed appellate counsel should always file a merit brief. Rule 3.1 of the Ohio Rules of Professional Conduct, which is identical to Model Rule 3.1, states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue in a proceeding, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Prof.Cond.R. 3.1.

**{¶ 66}** The comments to this rule make clear that a "lawyer's obligations under this rule are subordinate to federal or state constitutional law that entitles a defendant in a criminal matter to the assistance of counsel in presenting a claim or contention that otherwise would be prohibited by this rule." Comment 3 to Prof.Cond.R. 3.1. This comment shows that these rules were not only meant to protect appointed counsel representing an accused at trial, but on appeal as well.

**{¶ 67}** The right to counsel is imperative. Indigent defendants convicted of a serious crime need an advocate who will work diligently to locate meritorious issues "in a seemingly empty record." *Gale*, 429 A.2d 177, 182 (Ferren, A.J., dissenting). Because attorneys have an ethical duty and ability to put the state's case to the appropriate test, attorneys, whether at trial or on appeal, can raise issues even when they do not believe these issues will ultimately be decided in the client's favor. And if ultimate fairness of the proceeding is determined by the effectiveness of counsel in representing the defendant, then the goal should be to compel full representation through appeal and not to allow ways for that representation to be avoided. Further, a direct appeal from conviction is the last significant chance for substantial review of that conviction; without an attorney to guide an indigent defendant though the maze, the client will not even get that review and, in fact, will likely have other avenues of review closed off by procedural default. *See Gale* at 182, fn. 11 (Ferren, A.J., dissenting) ("The *Anders* approach leads to other unsettling questions. For example, if an attorney files an *Anders* brief on a direct appeal, has that attorney precluded collateral attack * * * on that record, on the ground that the

court implicitly has reached and deemed frivolous all potential issues presented by that record?”).

{¶ 68} Moreover, when appellate attorneys find what they believe to be error in a record on appeal, they may conclude that the reviewing court may deem it harmless error. But in the role of an advocate, attorneys can ethically raise such an issue and require the court to decide whether the state has proved that the error is harmless. There are many reasons why raising such issues can be beneficial and not detrimental to the court, although ultimately being declared harmless. First, even if the error is harmless, the decision can be instructive to trial courts in future cases. But more importantly, indigent defendants are entitled to have their day in court in their first appeal as of right. Just as trial counsel should be able to force the state to prove its case at trial, appellate counsel should be able to force the state to prove an error was harmless on appeal.

{¶ 69} After 20-plus years as a trial and an appellate judge, I have seen thousands of cases. This court receives numerous first appeals as of right where a convicted defendant's appellate counsel raises issues that are clearly without merit and easily overruled. In over a decade as an appellate judge, however, I am not aware of any case where this court sanctioned appellate counsel for raising non-meritorious issues in a defendant's first appeal as of right. Again, a defendant's first appeal as of right may be the last opportunity that defendant truly has to have the assistance of counsel take a serious look at his or her conviction and scour the record for meritorious issues.

**{¶ 70}** By refusing to allow counsel to withdraw, this court will also be better served because we will receive a brief on the merits, regardless of the issues. The review process will be the same for all similarly-situated defendants, and all defendants will thus receive the full extent of the Sixth Amendment's guarantee of right to counsel. It is my view that the preservation of the right to counsel must have a higher priority than the possible ethical dilemma that may occasionally arise for an attorney who finds no arguable error in an appeal.

**{¶ 71}** In declining to adopt the *Anders* protocol, the Supreme Court of Indiana explained:

> Overall *Anders* is cumbersome and inefficient. An attorney who withdraws pursuant to *Anders* must still review the record, complete at least some legal research, consult and advise the client, and draft a brief for submission to the Court of Appeals. 386 U.S. at 744. If all this is done, the attorney "may as well submit it for the purposes of an ordinary appeal." *Commonwealth v. Moffett*, 383 Mass. 201, 418 N.E.2d 585, 590-91 (Mass.1981). Furthermore, the Court of Appeals must conduct a "full examination of all the proceedings" to determine if there are any meritorious issues. *Anders*, 386 U.S. at 744. Any saving of time and effort by counsel in preparing an *Anders* brief is offset by increased demands on the judiciary, which is to some extent placed in the precarious role of advocate. *See Huguley v. State*, 253 Ga. 709, 324 S.E.2d 729, 731 (Ga.1985); *State v. Gates*, 466 S.W.2d 681, 684 (Mo.1971). And if the reviewing court finds any meritorious issues, even more time and money must be spent in substituting new counsel and starting the appeal all over again. *Dixon*, 152 Ind.App. at 438, 284 N.E.2d at 106-07. Requiring counsel to submit an ordinary appellate brief the first time — no matter how frivolous counsel regards the claims to be — is quicker, simpler, and places fewer demands on the appellate courts. *Cline*, 253 Ind. at 269-70, 252 N.E.2d at 796; *see also* Martha C. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection is More Equal than Others'*, 23 Fla.St.U.L.Rev. 625, 643-51 (1996) (describing principal considerations of states rejecting *Anders*); LaFave, supra, § 11.2(c), at 634 (same).

*Mosley v. State*, 908 N.E.2d 599, 607-608 (Ind.2009).

{¶ 72} The Indiana Supreme Court concluded in *Mosley*:

In sum, we believe that disapproving *Anders* is simpler, more effective, fairer, and less taxing on counsel and the courts. Prohibiting *Anders* withdrawals may also force counsel to be more diligent and locate meritorious issues in a seemingly empty record. *Gale v. United States*, 429 A.2d 177, 182 (D.C. 1981) (Ferren, J., dissenting). And in those few cases that offer no colorable argument of trial court error whatsoever, counsel may still be able to solicit a sentence revision or even a change in the law. [*State v.*] *Cigic*, [138 N.H. 313,] 639 A.2d [251,] 253 [1994]; Ind. Appellate Rule 7(B); *see also* Prof.Cond.R. 3.1 cmt. ("[T]he law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.").

*Id.* at 608.

{¶ 73} I agree with the well-reasoned *Mosley* decision. In sum, it is my view that the justification for *Anders* procedures simply does not outweigh the associated costs. The U.S. Constitution demands that indigent defendants receive their day in court *with the assistance of counsel*, especially when they face the dire consequences of such severe loss of liberty.