[Cite as *In re R.S.*, 2022-Ohio-4387.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

In RE: R.S., ET AL., :
:
Minor Children :
:
[Appeal by Ro. Ba., Mother] :

No. 111353

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** December 8, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD20904581 and AD20904582

---

### *Appearances:*

John H. Lawson, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother Ro. Ba. ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division (the "juvenile court"), terminating her parental rights and granting permanent custody of her minor children, R.S. (d.o.b. December 17, 2017) and J.S (d.o.b. December 21, 2018), to

appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS" or the "Agency").[1]

{¶ 2} Mother's appointed counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that, following an examination of the record, there are no meritorious grounds for appeal. We held counsel's motion in abeyance and afforded Mother an opportunity to file a *pro se* brief. Mother has failed to take advantage of this opportunity. Following our independent review, we grant appointed counsel's motion to withdraw and we dismiss the appeal.

## Procedural and Factual History

{¶ 3} On May 6, 2020, CCDCFS filed a complaint alleging that R.S. and J.S. were neglected, abused, and dependent children as defined by R.C. 2151.03(A)(3), 2151.031(B), and 2151.04(D). The complaint averred, in part, the following particulars:

> 1. On May 5, 2020, the mother and children were in a car while gunfire was exchanged between the car's driver and another individual on the street.
>
> 2. The car fled the police while the children were in the back seat; the children were not properly secured in car seats.
>
> 3. Mother was arrested and charged with child endangering in Lorain Municipal Court.
>
> 4. Mother lacks judgment necessary to provide safe and adequate care for the children.

---

[1] The children's father ("Father"), now deceased, was not a party to this appeal but will be referenced in the discussion to provide context.

5. Mother has unresolved issues in a criminal case in Brooklyn's Mayor's Court.

6. A sibling of the two (2) children was previously adjudged dependent due to Mother's incarceration and the sibling was ultimately committed to the legal custody of a relative.

7. The father of R.S. and alleged father of J.S., [Father], had two (2) pending criminal cases for domestic violence and aggravated menacing in the Garfield Heights Municipal Court.

8. [Father] does not have consistent contact with the children.

9. The alleged father of J.S., John Doe, has failed to establish paternity, and has failed to support, visit or communicate with the children since birth.

{¶ 4} Along with the complaint, CCDCFS also filed a motion for predispositional temporary custody of the children to the agency. On May 7, 2020, the juvenile court granted the motion and the children were placed in the predispositional temporary custody of CCDCFS.

{¶ 5} On June 16, 2020, the Agency filed the case plan that was developed to assist Mother in remedying the issues that led to the children's removal. The developed case plan required that Mother attend parenting classes to aid in the development of the skills necessary to provide safe and adequate care of the children. It also required that Mother complete all recommended drug and alcohol treatment, as well as submit to random drug screens. In addition, Mother had to engage in recommended mental health treatment. Further, the case plan required Mother to engage in all recommended anger management and domestic violence programs. Finally, it required that Mother obtain safe and adequate housing for herself and the children.

{¶ 6} On August 4, 2020, the magistrate conducted an adjudicatory hearing. On August 21, 2020, the juvenile court adjudicated the children neglected and dependent and placed them in the temporary custody of CCDCFS.

{¶ 7} On April 7, 2021, CCDCFS filed a motion to modify temporary custody to permanent custody. In support of the motion, CCDCFS asserted that the condition listed in R.C. 2151.414(B)(1) existed and that one or more of the factors listed in R.C. 2151.414(E) applied to the parents in this matter. CCDCFS further asserted that, after considering all relevant factors, including those listed at R.C. 2151.414(D)(1)(a-e), the evidence to be presented establishes clearly and convincingly that an award of permanent custody is in the children's best interest.

{¶ 8} In the affidavit filed in support of the Agency's motion, caseworker Quenisha Smith ("Smith") averred in pertinent part, as follows:

2. The children were committed to the predispositional temporary custody of CCDCFS on May 7, 2020.

3. The children were adjudicated neglected and dependent pursuant to an entry journalized on August 19, 2020.

4. The children were committed to the temporary custody of CCDCFS pursuant to an entry journalized on August 21, 2020.

5. A case plan was filed with Juvenile Court and approved which required that mother engage in services to address concerns for parenting, anger management, and domestic violence, housing, and substance abuse.

6. Mother was referred to counseling services and to intake assessment but cancelled the appointment twice. She subsequently completed the assessment in December 2020 but failed to engage in recommended services. An additional referral was made in March 2021, but that appointment was missed and has not been rescheduled.

7. Mother has completed an online parenting class but has failed to address the concerns for substance abuse and housing. Mother has continued to use marijuana and is currently homeless.

8. A case plan was filed with the Juvenile Court and approved which requires alleged father [Ja.Si.] to engage in services to address concerns for parenting, anger management, and domestic violence. [Ja.Si.] was also required to establish paternity and develop a relationship with the children.

9. [Ja.Si.] has not engaged in the recommended services. He was offered visitation with the children, but he refused to engage at the time.

10. Parents have verbally indicated a willingness to engage in services but have not followed through despite repeated referrals. A lack of case plan progress has prevented the Agency from requesting an extension of temporary custody.

11. Parents have not consistently visited with the children. Mother requested virtual visits, however she has failed to consistently participate in these visits. [Ja.Si.] has not visited with the children.

12. CCDCFS has attempted to identify relatives that would be able to care for the children, however none have been approved at this time.

13. The children have been placed in foster care since being committed to the emergency custody of CCDCFS. They are currently in their second foster home, the children have adopted well and developed an attachment to their foster parents. The children are well cared for, and all basic needs are being met. The children are at an age to benefit from a permanent placement.

14. Alleged Father, John Doe, has failed to make himself available for case plan services and has abandoned the children.

{¶ 9} In response, on July 20, 2021, Father filed a motion requesting that the juvenile court grant legal custody of the children to their paternal grandmother C.S. Father asserted that C.S. is willing and able to provide for the children's basic needs and was a superior alternative to continuing them in the Agency's temporary

custody or placing them in the Agency's permanent custody. In addition, Father asserted that C.S. had a strong relationship with the children and that she was not responsible for them being removed from their previous placement.

{¶ 10} On July 28, 2021, Father's appointed counsel filed a suggestion of death indicating that he had learned that Father died on July 19, 2021.

{¶ 11} On October 25, 2021, the Agency filed a motion to amend its previously filed motion to modify temporary custody to permanent custody to a motion to grant legal custody to T.W., a maternal cousin. In the brief in support, the Agency again noted that Mother had not been compliant with the services and was unable to provide a safe and permanent home for the children. The Agency also noted that Father had established paternity prior to his death. The Agency further noted that T.W. was willing to provide a permanent home for the children. On November 18, 2021, the Agency filed a notice of voluntary withdrawal of the motion to amend its previously filed motion for permanent custody to legal custody to T.W.[2]

{¶ 12} On January 24, 2022, the juvenile court held a dispositional hearing.

**Dispositional Hearing**

{¶ 13} At the hearing,[3] CCDCFS presented the testimony of Smith, whose testimony conformed to the aforementioned affidavit she provided in support of the agency's motion for permanent custody. Smith was assigned the case in May 2020.

---

[2] T.W. later indicated that he preferred to adopt the children, rather than gain legal custody. Ultimately T.W. withdrew himself from consideration.
[3] Mother did not appear at the hearing.

Smith testified about the case plan the Agency developed to assist Mother to remedy the issues that caused the children's removal and about Mother's level of engagement or lack therewith.

{¶ 14} Smith testified that Mother was referred to her Neighborhood Collaborative, offered through Cuyahoga Metropolitan Housing Authority ("CMHA"), as well as to St. Martin de Porres Family Center, to address the Agency's concerns that Mother lacked parenting skills. However, Mother never utilized the CMHA referral and attended only one of eight sessions offered through St. Martin de Porres Family Center. Mother claimed to have completed an online parenting course, but the Agency was unable to verify whether the content of the course was appropriate based on the children's ages and their respective stage of development. Smith testified that even if Mother had completed the course, there was no evidence that she benefited from the course.

{¶ 15} Smith testified that the Agency's concerns that Mother lacked parenting skills never subsided. Smith noted that Mother had to be constantly redirected to behave appropriately during visits with the children, whether the visits were in-person or virtually. For example, Mother had to be constantly advised not to tell the children she was coming to get them soon. In one instance, Mother told the children she was coming to get them, and they waited at the window for hours, but Mother never arrived.

{¶ 16} Smith testified that the Agency referred Mother to Moore Counseling to address anger management and domestic violence issues. Mother did a partial

assessment but never followed through with any of the services Moore Counseling offered. Smith testified despite facilitating transportation and providing opportunities to engage virtually, Mother failed to avail herself of any accommodations the Agency or Moore Counseling provided.

{¶ 17} Smith testified that the Agency's domestic violence concerns never abated, noting that Mother once appeared for a virtual visit with a scar on her head. When asked, Mother told the children that it was the result of a car accident. However, Smith testified that later, at the only in-person visit Mother attended, Mother's biological mother informed the Agency that Mother received the scar during a domestic violence altercation "with the newer individual she was engaged with. The Agency was also informed that Mother had to be hospitalized because of the altercation."

{¶ 18} Smith testified that Mother was also referred to Moore Counseling to address mental health and substance abuse issues. At the partial assessment referenced earlier, Mother disclosed that she used marijuana, so Moore Counseling placed her in non-intensive outpatient treatment. However, Smith testified that the results of Mother's drug screen indicated a much greater level of usage, so Moore Counseling placed her in the intensive outpatient treatment. Smith testified that Mother never followed through with any of the services or recommendations and never submitted to the Agency's request for random drug screens.

{¶ 19} Smith testified about the housing component of the case plan, noting that Mother disclosed that she was displaced or homeless. Mother disclosed that

she slept in cars, motels, hotels, and at different individuals' houses. Smith referred Mother to the Neighborhood Collaborative and made referrals to several women's shelters, but Mother failed to follow through. Smith testified that Mother once claimed she was living with her biological mother, but Smith determined that this was not true. At the time of the dispositional hearing, Smith did not know where Mother was actually living.

{¶ 20} Smith testified that Mother was not consistently visiting the children. Smith noted that the Agency had initially arranged for Mother to have in-person visits with the children, but Mother requested virtual visits and the Agency obliged. The Agency scheduled the virtual visit for every Friday at a specified time. Smith testified that Mother routinely missed these visits and would not call to reschedule and that Mother's last in-person visit was in April 2021.

{¶ 21} Smith testified that the children were in a foster home and had been in the same home since December 2020. Smith noted that she had observed the children's loving interaction with their foster parents, whom they affectionately call "mom and dad." Smith added that the foster parents were very committed to the children and had consistently indicated their willingness to provide a permanent home for the children.

{¶ 22} Based upon all the foregoing, Smith opined that returning the children to Mother would not be in their best interest and recommended that the juvenile court grant the Agency's motion for permanent custody. Smith underscored that Mother had failed to engage in the recommended services to

address any of the Agency's concerns. Smith also opined that granting legal custody to the children's maternal grandmother would not be in their best interest, noting that five of the maternal grandmother's six children, including the mother in this case, had been permanently removed from her care.

{¶ 23} In addition, Smith opined that it would not be in the children's best interest to grant legal custody to their paternal grandmother C.S. Smith noted that Mother lost custody of her oldest child to C.S., and that the relationship has been toxic since that time. Smith also noted that the level of toxicity had increased because of C.S.'s belief that Mother had something to do with the murder of her son, the children's father.

{¶ 24} C.S. testified at the dispositional hearing. The following pertinent exchange took place:

> Q. Ma'am, is it your intention today to become the legal custodian of the children?
>
> A. Not necessarily. If I had to, I would. I'm not necessarily trying to take away their parents' rights. I would like to help [Mother] to establish and become a good mother.

{¶ 25} The children's guardian ad litem, Pamela Hawkins, (the "GAL"), who previously filed a written report, likewise recommending that permanent custody be granted to the Agency, indicated that her sentiments favoring a grant of permanent custody to the Agency had not changed. The GAL also opined that it would not be in the children's best interest for the juvenile court to grant legal custody to either the paternal grandmother or to the maternal grandmother.

{¶ 26} On February 15, 2022, the juvenile court journalized an entry terminating all parental rights and granting permanent custody of the children to the Agency.

{¶ 27} Mother now appeals.

## Law and Analysis

### *Anders* Standard and Potential Issues for Review

{¶ 28} In *Anders*, the United States Supreme Court held that if appointed counsel, after a conscientious examination of the case, determines the appeal to be wholly frivolous, he or she should advise the court of that fact and request permission to withdraw. *In re C.S.,* 8th Dist. Cuyahoga No. 105700, 2017-Ohio-8664, ¶ 10, citing *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* Further, counsel must also furnish the client with a copy of the brief and allow the client sufficient time to file his or her own brief. *Id.*

{¶ 29} Once the appellant's counsel satisfies these requirements, this court must fully examine the proceedings below to determine if any arguably meritorious issues exist. *Id.*; Loc.App.R. 16(C). If we determine that the appeal is wholly frivolous, we may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or we may proceed to a decision on the merits if state law so requires. *Id.*; *Anders*; Loc.App.R. 16(C) ; *see also State v. Sims*, 2019-Ohio-4975, 149 N.E.3d 1143,¶ 7-9, (8th Dist.).

{¶ 30} Although *Anders* arose in a criminal context, this court has applied *Anders* in appeals involving the termination of parental rights. *In re J.L.*, 8th Dist. Cuyahoga No. 109626, 2020-Ohio-5254, ¶ 35, citing *In re A.M.*, 8th Dist. Cuyahoga No. 106789, 2018-Ohio-3186, ¶ 11; *In re C.S.* at ¶ 13.

> Previously, former Loc.App.R. 16(C) set forth the specific procedure governing *Anders* briefs and motions to withdraw followed by this court. That rule was amended on February 1, 2019, and no longer includes any procedure for the filing of *Anders* briefs. However, as this court has previously stated, "the absence of a local rule governing *Anders* briefs does not prevent this court from accepting these briefs nor from following the procedure the United States Supreme Court outlined in *Anders*." *Sims* at ¶ 7-14 (discussing "the duties of appellate counsel when filing an *Anders* brief and our duties when ruling on counsel's motion to withdraw on the grounds that the appeal would be frivolous" even in the absence of former Loc.App.R. 16(C), different Ohio appellate courts' views on *Anders* briefs and this court's decision that "until the Ohio Supreme Court resolves the split among the Ohio Appellate Districts regarding the application of *Anders* * * * we will continue to adhere to the procedures outlined in *Anders* pertaining to both counsel and the court when appointed appellate counsel files a motion to withdraw because an appeal would be wholly frivolous"); *see also State v. Lariche*, 8th Dist. Cuyahoga No. 108512, 2020-Ohio-804, ¶ 7.

*Id.* at ¶ 36.

{¶ 31} In this matter, Mother's appointed counsel has not set forth potential assignments of error but instead has set forth a detailed analysis of the record and the controlling case law and asserts:

> The undersigned has read the permanent custody trial transcript of January 24, 2022 and reviewed all pertinent documents from the trial court's records, including motions, orders, and the Guardian ad Litem's reports.
>
> * * *

Based upon this review, the undersigned cannot discern any meritorious issues.

\* \* \*

There is clear and convincing evidence presented at trial that Mother has failed to remedy the issues which caused the removal of the two (2) children on May 7, 2020. Mother has shown a lack of commitment towards the two (2) children and is unable to provide a home for the children. She has lost custody of three (3) other children. The factual elements pursuant to R.C. 2151.414(E)(4) have been proven. (Mother's lack of commitment by clear and convincing evidence).

Additionally, the evidence that the permanent custody decision is in the child[ren]'s best interest pursuant to R.C. 2151.414(D) has also been proven by clear and convincing evidence.

Therefore, the undersigned submits this *Anders* Brief as no meritorious issues exist in the trial transcript and records.

**Independent Review**

{¶ 32} At the outset, we note, it is well established that a parent has a fundamental right to raise and care for his or her child. *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. We recognize "that termination of parental rights is '"the family law equivalent of the death penalty in a criminal case."'" *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, quoting *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 33} However, it is "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing

*In re Wise*, 96 Ohio App.3d 619, 645 N.E.2d 812 (9th Dist.1994). Where parental rights are terminated, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860 (Aug. 1, 1986).

{¶ 34} The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency.

**First Prong: R.C. 2151.414(B)(1)(a)-(e)**

{¶ 35} Under the first prong, the juvenile court must find by clear and convincing evidence one of the following five factors:

> (a)  The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b)  The child is abandoned.
>
> (c)  The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d)  The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child

has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 36} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 37} In this matter, the juvenile court found, among others, pursuant to R.C. 2151.414(B)(1)(a), that the children could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 38} In assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.,* 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re R.M.,* 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14; *In re B.P.,* 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13.

{¶ 39} A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent.

*In re Ca.T.,* 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.,* 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, at ¶ 42.

{¶ 40} Pursuant to R.C. 2151.414(E), the juvenile court found that

following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In considering whether the parents have substantially remedied those conditions, the Court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 41} Specifically, the juvenile court found:

The children were removed when they were with their mother in a car during a shootout and a high-speed chase with no car seat. The mother was charged with child endangering, and still has an open warrant for her arrest for this charge.

* * *

The children's mother has not remedied the conditions causing removal as she has not resolved the criminal charges of child endangering or the open warrant for her arrest.

* * *

She has shown a lack of commitment to the children by failing to visit and by failing to complete the services listed on the case plan in order to be able to provide for their basic needs.

* * *

The mother's visits are inconsistent, and [despite being made] virtual at mother's request. The last in-person visit with the mother was in March or April 2021.

The mother has not completed the case plan, and her current residence is unknown.

The father is deceased from a homicide that occurred in July 2021.

{¶ 42} Indeed, the juvenile court's finding above is supported by clear and convincing evidence. Smith provided exhaustive testimony that the agency developed a case plan designed to remedy the issues that led to the children's removal. Yet, the overwhelming evidence established that Mother failed to commit to the case plan's objectives. It is undisputed, that Mother failed to engage in, and therefore could not benefit from, the very services designed to achieve reunification with her children.

{¶ 43} The record clearly demonstrates that the children could not be placed with Mother within a reasonable time or should not be placed with Mother. Similarly, as an alternative to placement with Mother, the children could not be placed with Father, who died from a homicide in July 2021.

{¶ 44} Our review of the record reveals that the juvenile court's findings under the first prong are supported by competent and credible evidence. Finding no error with the juvenile court's findings under the first prong, we consider the court's finding under the second prong.

**Second Prong: R.C. 2151.414(D)**

{¶ 45} The second prong also requires the juvenile court to find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. We review a trial court's best-interest determination under R.C. 2151.414(D) for an abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No.

95188, 2010-Ohio-5618, ¶ 47. In this regard, "'[a] trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 60.

{¶ 46} R.C. 2151.414(D)(1) sets forth best-interest factors that the court must consider when making the best-interest determination under R.C. 2151.414(D)(1), including:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child * * *;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 47} The juvenile court has considerable discretion in weighing these factors. *In re D.A.* at ¶ 47. Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, "[R.C. 2151.414(D)(1)] requires a weighing of all the

relevant factors * * * [and] requires the court to find the best option for the child * * *." *Id.* at ¶ 64.

{¶ 48} Further, the Ohio Supreme Court, in *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1 held that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). *Id.* at ¶ 31. Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors. *Id.*

{¶ 49} We begin our inquiry into the second prong by noting the juvenile court articulated that it considered the relevant factors set forth under R.C. 2151.414(D)(1) when assessing the child's best interests. The record before us indicates that the juvenile court satisfied the statutory requirements herein.

{¶ 50} The juvenile court explained its reasoning as follows:

> The children have been in the same foster home since December 2020. The children call their foster parents "Mom" and "Dad."
>
> * * *
>
> The children's father is deceased. The children's mother has not remedied the conditions causing removal as she has not resolved the criminal charges of child endangering or the open container warrant for her arrest. She has shown a lack of commitment to the children by failing to visit and by failing to complete the services listed on the case plan in order to be able to provide for their basic needs.

* * *

The paternal grandmother who is asking for legal custody last visited the children approximately one or two months ago. She lives with her son Jason and her grandson Terrance in a motel. She does not have sufficient income to provide for the children. She has not requested overnight visits and when asked on the witness stand if she wanted to be legal custodian: her first answer was "[n]ot necessarily." The GAL report for the children more than once points out a similar vacillation in the paternal grandmother's desire. The GAL ultimately recommends permanent custody as being in the children's best interest.

* * *

The children are in a home where they are clearly bonded and doing well. The court notes that the mother, through counsel filed a motion for legal custody to maternal grandmother. The mother did not support the motion for legal custody to the paternal grandmother, and based on the testimony and evidence presented, the nature of the relationship between mother and paternal grandmother is unclear. This is important because one significant aspect of legal custody is the preservation of residual parental rights. *See In re Akwal*, 95 Ohio App.3d 309 (Ohio Ct.App. 1994).

{¶ 51} Undeniably, the best-interest factors that the juvenile court must consider under the second prong was encapsulated above. The juvenile court's termination of parental rights and award of permanent custody to the Agency is supported by clear and convincing evidence. The children could not be placed with Mother, who failed to engage with the objectives of case plan and thus failed to remedy the conditions that caused the children's removal. Their father was deceased, and neither grandparent were viable alternatives. The children deserve permanency the foster parents were willing and able to provide.

{¶ 52} Consequently, following a thorough, independent examination of the record as required by *Anders*, we conclude that the juvenile court did not abuse its

discretion in determining that an award of permanent custody was in the children's best interest and did not err when it awarded permanent custody to the Agency.

{¶ 53} Accordingly, we agree that there is no merit to the appeal and that this appeal is wholly frivolous. We grant counsel's motion to withdraw and dismiss this appeal.

{¶ 54} Appeal dismissed.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_Emanuella D. Groves_
EMANUELLA D. GROVES, JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., CONCUR;
SEAN C. GALLAGHER, A.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., CONCURRING IN JUDGMENT ONLY:

{¶ 55} I respectfully concur in judgment only based on the precedent from this district authorizing the use of the *Anders* proceeding in custody and parental rights cases. *In re T.E.*, 8th Dist. Cuyahoga No. 104228, 2016-Ohio-5935; *In re J.L.*, 8th Dist. Cuyahoga No. 109626, 2020-Ohio-5254, ¶ 33. This court needs to revisit those decisions en banc. As noted by the majority, Loc.R. 16(C) (effective July 14, 2014) no longer exists. Notwithstanding the rule change, this court continues to apply the principles of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d

493 (1967), including permitting extra time for the parent to file a pro se brief in response to appointed counsel's request to withdraw.

{¶ 56} On May 25, 2022, appellant was offered approximately 45 days to file her pro se brief following submission of the initial briefing. This delay and that associated with appointing new counsel should our *Anders* review reveal colorable issues are incompatible with App.R. 11.2(C), which expedites parental rights cases with limited exceptions to the deadlines only for the "most unusual circumstances and only for the most compelling reasons." *See, e.g., In re N.C.*, 2d Dist. Montgomery Nos. 28105 and 28117, 2019-Ohio-567, ¶ 81 (concluding that *Anders* is no longer applicable to the termination of parental rights in the Second District). *Anders* does not present such a circumstance to extend the time within which a parental rights appeal is heard and concluded.

{¶ 57} In light of our precedent, which this court is obliged to follow, I reluctantly concur in judgment only.