[Cite as *In re M.K.*, 2024-Ohio-5563.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: M.K. & D.H. | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Andrew J. King, J.<br><br>Case No. 2024 AP 08 0029<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division, Case No. 23 JN 00364 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 22, 2024 |

APPEARANCES:

| For Appellee | For Appellant, L.H. |
|---|---|
| LISA VITALE ARNOLD<br>Tuscarawas County Job & Family Services<br>389 – 16th Street, S.W.<br>New Philadelphia, Ohio 44663 | RICHARD D. HIXSON<br>3808 James Court, Suite 2<br>Zanesville, Ohio 43701<br><br>Guardian ad Litem<br><br>MARY WARLOP<br>116 Cleveland Avenue, N.W., Suite 500<br>Canton, Ohio 44702 |

*Hoffman, J.*

**{¶1}** Appellant L.H. ("Mother") appeals the August 15, 2024 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated Mother's parental rights with respect to her minor child ("the Child") and granted permanent custody of the Child to appellee Tuscarawas County Department of Job and Family Services ("TCJFS").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and T.H. ("Father") are the biological parents of the Child.[1] The family has a history with TCJFS, both with and without court involvement, dating back to August, 2019. Relative to the instant matter, TCJFS became involved with the family on December 26, 2023, due to concerns about Mother's mental health and her inability to care for the Child and the Child's older sibling ("the Sibling"). M.K., the father of the Sibling, lives out of state and is a registered sex offender. Father has been convicted of domestic violence, child endangering, menacing, and trespassing. Following a shelter care hearing on December 28, 2023, the Child and the Sibling were placed in the temporary custody of TCJFS. On the same day, TCJFS filed a complaint, alleging the Child and the Sibling were neglected and dependent. The trial court appointed Attorney Lisa Vitale Arnold as Guardian ad Litem ("GAL") for the Child and the Sibling.

**{¶3}** Following an adjudicatory hearing on January 31, 2024, the trial court found the Child and the Sibling to be dependent. The trial court granted Mother's motion to dismiss the allegation of neglect. Neither Father nor the father of the Sibling appeared for the hearing. The trial court ordered the Child and the Sibling remain in the temporary

---

[1] Father is not a party to this appeal and did not appear in the trial court.

custody of TCJFS. The trial court conducted a dispositional hearing on February 21, 2024. The trial court approved and adopted the case plan, and ordered the Child and the Sibling remain in the temporary custody of TCJFS. Neither Father nor the father of the Sibling appeared for the hearing. The Sibling was placed with C.H., an adult sister.

{¶4} During a meeting with the TCJFS caseworker on January 25, 2024, Mother stated she did not wish to engage in case plan services to reunify with the Child and the Sibling. Mother explained she did not want to "jump through hoops" and she knew the Child and the Sibling were safe. Mother indicated she did not oppose C.H. being given legal custody of the Sibling or TCJFS receiving permanent custody of the Child.

{¶5} Mother was granted supervised, one-hour weekly visits with the Child and the Sibling. Since February 7, 2024, Mother attended only three (3) of six (6) scheduled visits. Mother no-showed and failed to contact TCJFS about the missed visits. Mother's last visit was on February 28, 2024. After attending two (2) visits, the Sibling reported a wish to no longer visit with Mother. TCJFS suspended Mother's visitation on April 2, 2024, due to the three (3) no-shows, which was a consequence of Mother's violation of TCJFS's visitation policy.

{¶6} The trial court conducted review hearings on April 22, 2024, and June 24, 2024, and maintained the status quo. On May 7, 2024, TCJFS filed a motion to modify prior disposition of the Child to permanent custody as well as a motion to modify prior disposition of the Sibling to legal custody. The trial court conducted a hearing on the motions on August 13, 2024. On the day of the hearing, Mother filed a motion to extend temporary custody in order for her to work on her case plan. Therein, Mother stated "she was not mentally balanced at the time the caseplan [sic] services were commenced,"

adding she had been evicted and living in her car. August 13, 2024 Motion to Extend Temporary Custody/Caseplan Services at p. 1, unpaginated. Mother explained she moved to Virginia in April, 2024, where she resides with her mother and "has been able to stabilize herself so as to productively work a plan." *Id.*

**{¶7}** At the hearing, Mother and the father of the Sibling stipulated to a grant of legal custody of the Sibling to C.H. The trial court found the stipulations were knowingly and voluntarily made and accepted the same. The trial court denied Mother's motion to extend temporary custody.

**{¶8}** The following evidence was presented at the hearing:

**{¶9}** C.H., who was 21 years old at the time of the hearing, is Mother's daughter and currently the legal guardian of the Sibling. C.H. stated she moved out of Mother's home when she was approximately 17 years old. C.H. testified Mother is schizophrenic, and since C.H. was little, "it's like a cycle." Transcript of August 13, 2024 Hearing at p. 15. C.H. explained Mother would do well for a period of time, but would stop taking her medication because she felt better, and then would spiral. When Mother hit "rock bottom," she would hallucinate and would not take care of her children. C.H. recalled the cycles would occur every couple of months. C.H. has visited the Child at his foster placement and observed improvements in the Child's behavior. C.H. expressed concerns about the Child return returning to Mother due to Mother's mental health issues.

**{¶10}** Breana Bryant, the ongoing TCJFS caseworker assigned to the family, testified regarding the family's history with TCJFS, which dated back to August, 2019. The concerns at the time were truancy involving the Sibling, domestic violence, and drug use in the home. After Mother worked an informal case plan, the Sibling was reunified

and the case was closed. TCJFS became involved with the family again in June, 2021, due to concerns about Father being intoxicated when the Child and the Sibling were in his care. Mother was advised if Father returned to the home, there would be repercussions. The case was closed in August, 2021. There was no court involvement in that case.

{¶11} In September, 2021, Father was found at the home and arrested on outstanding warrants for domestic violence and child endangering. Father was convicted of both charges. Mother worked a case plan and she was reunited with the Child and the Sibling in December, 2022. TCJFS maintained protective supervision until such was terminated by the trial court in June, 2023.

{¶12} Bryant stated the instance case commenced on December 26, 2023, due to Mother's mental health and inability to care for the Child and the Sibling. Mother was hearing voices and hallucinating. Mother had stopped taking her medication and lost her job as a result. The Sibling took on the role of caring for the Child. TCJFS was granted temporary custody. When Bryant met with Mother on January 25, 2024, Mother advised the caseworker she did not want to jump through hoops again and work a case plan. Mother stated she just wanted to see the Child and the Sibling. Mother told Bryant "she was okay with where her children were at, and that they were safe." Tr. at p. 29. Mother had visits with the Child and the Sibling, but the visits were suspended in March, 2024, after Mother had three no-shows.

{¶13} Bryant noted Mother had no contact with TCJFS from February 28, 2024, until July 22, 2024, when she reached out to Bryant, asking what she needed to do to get the Child back. Bryant advised Mother TCJFS had filed for permanent custody and the

hearing was in three (3) weeks. Bryant had no contact with Father throughout the pendency of the case.

{¶14} Bryant explained Mother was not on the case plan filed on January 29, 2024, because she had denied case plan services. Mother had a negative drug screen on December 26, 2023, and a positive drug screen for TCH on January 24, 2024. Bryant stated Mother had failed to remedy the concerns which led to the removal of the Child from the home. Bryant recalled the Sibling attended only two (2) visits with Mother before expressing a desire not to visit Mother. During the two (2) visits, the Sibling was parenting the Child. Mother did not have much interaction with the Child during the one visit with only the Child. The Child played with toys and entertained himself.

{¶15} The Child is currently in the same foster home in which the Child was placed during the case initiated in September, 2021. When the Child returned to the foster home, the Child had a lot of behavioral issues and was not potty trained. The Child had previously had a routine and structure with the foster family. The Child is bonded with the foster family and is particularly attached to the foster mother. The Child does well with the other children in the foster home. The foster parents are willing to adopt the Child. Bryant noted the Child had been in the foster family's care for half of the Child's life.

{¶16} Mary Warlop, the GAL, testified she was also the GAL in the case initiated in September, 2021. Warlop indicated she had not had any contact with Mother or Father during the present matter. Warlop was concerned about the Child returning to Mother's care due to Mother's history of untreated mental health issues, problems with her stability, and lack of contact with the Child. Warlop was unable to observe Mother's visits with the Child as a result of the suspension of Mother's visits. Warlop observed the Child in the

foster home on several occasions. Warlop found the home safe and appropriate. The Child is well-loved, interacts appropriately with the foster parents, and is bonded and attached to them. Warlop expressed her belief permanent custody was in the best interest of the Child.

{¶17} Mother testified on her own behalf. She acknowledged her mental health issues and her struggles to get her medication properly adjusted. Mother had been living with her uncle, but he evicted her after two or three weeks. Mother lived in her car for a couple of months. Mother stated she called the homeless shelter, but no one answered. Mother indicated she was taking her medication at the time of the hearing. Mother moved to Virginia in late March, early April, 2024, and was residing with her mother. Mother explained she stopped visiting the Child because during her prior visit, the Child said something which upset her. Mother was seeing a psychiatrist in Virginia and her medication was properly adjusted. Mother expressed her willingness to work on a case plan and felt she was in a position to do so.

{¶18} During cross-examination, TCJFS Attorney Lisa Vitale Arnold questioned Mother, "you stopped visiting [the Child] because of a statement [the Child] made to you. So, your solution to help [the Child] through whatever [the Child] was going through was to go away and have no contact?" Tr. at p. 91. Mother responded, "No. * * * I was homeless. I mean, I was living out in my car. * * * I didn't want [the Child] to see me that way." *Id.* Mother explained she did not want to work a case plan because she had already done so in the prior case. Mother insisted she would be able to care for the Child because "if I take my medication every day, I know that nothing's going to happen." *Id.* at p. 97. Mother downplayed her history of cycles with respect to her mental health. Mother

indicated she did not return to Ohio after moving to Virginia because she and her mother "argued about whether or not [she] should come back here to Ohio to get [the Child and the Sibling]." *Id.* at p. 94.

**{¶19}** Via Judgment Entry filed August 15, 2024, the trial court terminated Mother's parental rights with respect to the Child and granted permanent custody of the Child to TCJFS. The trial court found the Child could not and should not be placed with Mother within a reasonable time and Mother continually and repeatedly failed to remedy the conditions which caused the Child's removal. The trial court also found a grant of permanent custody was in the best interest of the Child. In addition, the trial court granted legal custody of the Sibling to C.H., based upon Mother's stipulation and the recommendation of the GAL. The trial court denied Mother's motion for an extension of temporary custody.

**{¶20}** It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT'S FINDING THAT THE MINOR CHILDREN COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME OR SHOULD NOT BE SO PLACED WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶21}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

**{¶22}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. (Citation omitted.) *In re D.R.*, 2024-Ohio-1819, ¶28 (5th Dist.). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, syllabus (1978).

**{¶23}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶24}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant

permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶25}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶26}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶27}** We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse-of-discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A trial court's failure to base its decision in consideration of the best interest of the

child constitutes an abuse-of-discretion. *In re R.S.*, 2022-Ohio-4387, ¶ 45 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, at ¶ 60 (8th Dist.). "The term 'abuse-of-discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶28} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶29} Mother challenges the trial court's finding the Child could not or should not be placed with her within a reasonable time, which the trial court based upon concerns regarding her mental health. Mother contends she was given a "mere four-to-five-month period [between the finding of dependency and TCJFS's filing of the motion for permanent custody] to adequately address her mental health concerns." Brief of Appellant at p. 9. Mother asserts "her initial refusal to work case plan services should not eliminate the obligation of the agency to continue attempt[s] to provide such services, especially in a case where Mother initially exhibited significant mental health symptoms that could cloud

her judgment." *Id.* Mother also challenges the trial court's finding permanent custody was in the best interest of the Child, arguing the trial court failed to give satisfactory weight to R.C. 2151.414(D)(1) as TCJFS did not fully analyze all dispositional options prior to moving for permanent custody.

**{¶30}** As set forth in our Statement of the Case and Facts, *supra*, Mother refused to engage in case plan services because she did not want to jump through hoops again. Although Mother claimed she saw a psychiatrist while living in Virginia and was mentally stable, Mother downplayed the severity of her mental health issues when she stopped her medication. C.H. described Mother's mental health issues, explaining Mother is schizophrenic and spirals when she stops taking her medication. C.H. noted these cycles of stability and instability occur every couple of months. During the two visits between Mother, the Child, and the Sibling, the Sibling parented the Child. During the one visit with only the Child, Mother did not engage and the Child played alone. Mother no-showed for three visits and her visitation was suspended as a result. She made no attempt to reinitiate visitation.

**{¶31}** The Child was in the temporary custody of TCJFS between September 13, 2021, and December 13, 2022. The Child returned to Mother's care with protective supervision, which was terminated in June, 2023. However, the Child was removed again on December 26, 2023, due to Mother's mental health and inability to care for the Child. The Child is doing well in the foster home. After the six-month period with Mother, the Child returned to the foster family with behavioral issues which had been previously addressed. The foster parents wish to adopt the Child. The GAL also recommended permanent custody be granted to TCJFS due to Mother's history of untreated mental

health issues, her lack of stability, and her failure to have any contact with the Child after February 28, 2024.

**{¶32}** Based upon the foregoing, we find the trial court's finding the Child could not and should not be placed with Mother in a reasonable time was supported by competent, credible evidence and was not against the manifest weight of the evidence. We further find the trial court's finding it was in the Child's best interests to grant permanent custody to TCJFS was not against the manifest weight of the evidence.

**{¶33}** Mother's first and second assignments of error are overruled.

**{¶34}** The judgment of the Tuscarawas Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.
Delaney, P.J.  and
King, J. concur