[Cite as *In re Z.C.*, 2025-Ohio-2123.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN RE: Z.C.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Andrew J. King, J.
Hon. David M. Gormley, J.


Case No. 2024CA00195

O P I N I O N


CHARACTER OF PROCEEDINGS:
Appeal from the Stark County Court of
Common Pleas, Family Court Division,
Case No. 2023JCV00689

JUDGMENT:
Affirmed


DATE OF JUDGMENT ENTRY:
June 16, 2025

APPEARANCES:

For Appellee

BRANDON J. WALTENBAUGH
Stark County JFS
402 – 2nd Street, S.E.
Canton, Ohio 44702

Guardian ad Litem

ELLEN LINZ, GAL
1967 East Maple, #9
North Canton, Ohio 44702

For Appellant – S.H. (Mother)

KATHALEEN S. O'BRIEN
116 Cleveland Avenue, N.W., Suite 303
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1}   Appellant S.H. ("Mother") appeals the November 8, 2024 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor child ("the Child") and granted permanent custody of the Child to appellee Stark County Department of Job and Family Services ("SCJFS" or "the Agency").

STATEMENT OF THE FACTS AND CASE

{¶2}   Mother and W.C. ("Father") are the biological parents of the Child.[1]   The Child was born on June 21, 2023. SCJFS filed a complaint on June 22, 2023, alleging the Child was dependent and requesting temporary custody of the Child. The complaint was based upon Mother's long history with children's services agencies across Ohio for the last twenty (20) years, Mother having lost custody of six (6) other children, pending SCJFS cases involving several of those children, Mother's criminal history which included a conviction for interference with custody, Mother's mental health, her substance abuse, and her lack of progress on her case plans in the other pending custody matters. The trial court conducted an emergency shelter care hearing on June 23, 2023, and placed the Child in the temporary shelter custody of SCJFS.  SCJFS filed an amended complaint on July 13, 2023, to correct the spelling of the Child's name. The trial court appointed Attorney Kristen Guardado as Guardian ad Litem ("GAL").[2]

{¶3}   At the adjudicatory hearing on August 23, 2023, Mother stipulated to a finding of dependency and the trial court found the Child to be dependent. The trial court

---

[1] Father is not a party to this appeal.
[2] Attorney Guardado withdrew as GAL on November 27, 2023, and the trial court appointed Attorney Ellen Linz as the new GAL.

proceeded to disposition and placed the Child in the temporary custody of SCJFS. On October 18, 2023, the GAL filed a motion to terminate Mother's visits with all of her children. On November 1, 2023, the trial court suspended visitation until further order of the court. The trial court found Mother fell asleep during visits, continued to use drugs, missed visits, was unprepared for visits, and arrived late to one visit, clearly under the influence of drugs, and wearing a shirt proclaiming "smoke pot, eat twat, and smile a lot." On two (2) occasions during the pendency of the case, the trial court reviewed the issue of visitation. However, the trial court did not lift the no contact order and Mother did not visit the Child after November 1, 2023.

{¶4} The trial court conducted review hearings on December 15, 2023, and May 17, 2024, and maintained the status quo. SCJFS filed a motion for permanent custody on May 14, 2024. The trial court scheduled a hearing on the motion for permanent custody on September 11, 2024.

{¶5} The GAL filed her final report on September 4, 2024. The GAL recommended permanent custody of the Child be granted to SCJFS and such was in the Child's best interest. Father appeared before the trial court on September 11, 2024, and voluntarily relinquished his parental rights. After the trial court advised Father of the nature and consequences of the motion for permanent custody and informed Father of his rights, Father stipulated to the granting of permanent custody of the Child to SCJFS. Upon Mother's motion, the trial court continued the hearing until November 5, 2024.

{¶6} On September 26, 2024, Mother filed a motion to extend temporary custody or to grant legal custody of the Child to M.H., her mother ("Maternal Grandmother"). The

trial court conducted a hearing on November 5, 2024, at which time the trial court heard evidence on Mother's pending motion as well as SCJFS's motion for permanent custody.

{¶7}  SCJFS caseworker Lynsey Overton testified regarding the procedural history of the case as well as the cases involving Mother's other children. Overton stated Mother's case plan required her to complete a parenting assessment and comply with all recommendations, engage in mental health and substance abuse treatment, obtain housing and employment, and complete parenting classes.

{¶8}  Mother completed her parenting assessment which recommended comprehensive mental health treatment, substance abuse treatment, stable housing and financial support for all of her children, complete drug and alcohol screens, and complete Goodwill parenting classes.  Mother began comprehensive mental health and substance abuse treatment with CommQuest in April, 2023.  However, Mother made very little progress and was discharged in November, 2023, because she stopped attending. Mother began comprehensive mental health and substance abuse treatment with another provider in March, 2024, but was discharged in July, 2024, due to lack of attendance. Although Mother told Overton she was on a waitlist for another treatment program, Mother did not give Overton the name of the provider.

{¶9}  Mother was evicted in October, 2023. Overton indicated Mother had not provided her with the address of anywhere Mother had been living since her eviction. Mother informed Overton she was staying with family and friends, however, those living arrangements were not permanent. Mother testified she was living in Cleveland and provided the court with an address. The permanency of the Cleveland address was never discussed.

**{¶10}** Although Mother was referred to Goodwill parenting classes in the fall of 2023, Overton explained Goodwill would not permit Mother to attend the classes as her visitation with the Child had been terminated. Mother would have been referred at a later time once her visits were reinstated, however, Mother never sought to reinstate her visits. Mother had not had any contact with the Child since November 1, 2023.

**{¶11}** Mother had six (6) different jobs in 2024. However, Overton was not able to verify Mother's employment as Mother failed to provide the caseworker with the necessary documents. Mother testified she was currently employed as a cashier in a casino.

**{¶12}** Overton also testified during the best interest portion of the hearing. Overton testified the Child is in good health with no developmental concerns. The Child has been in the same foster home since June 22, 2023, the day after the Child's birth. All of the Child's needs are being met. The foster parents are interested in adopting the Child. The Child is not bonded with Mother.

**{¶13}** Overton stated family was identified as potential placement for the Child. Overton explained Maternal Grandmother has custody of three of the Child's siblings, however, placement with Maternal Grandmother was not suitable for the Child due to the size of her apartment. In November, 2023, SCJFS advised Maternal Grandmother she would need to move to a larger home. Maternal Grandmother has not done so. Maternal Grandfather contacted SCJFS regarding placement. SCJFS determined he would not be an appropriate placement due to the Agency's involvement with him in the past as well as past allegations of physical abuse.

**{¶14}** Maternal Grandmother testified on Mother's behalf. She stated she is on disability and lives in Section 8 housing. Maternal Grandmother explained she looked for a larger home, however, it was difficult to find one which accepted Section 8. Maternal Grandmother added she did not want the other children to change school districts. Maternal Grandmother did not believe the reasoning behind SCJFS's removal of the children from Mother's care. Maternal Grandmother had no concerns regarding Mother's ability to care for the Child or the other children. Maternal Grandmother indicated she would abide by a court order allowing Mother to have only supervised visitation with the Child, but noted her belief Mother should be able to spend as much time as possible with her children.

**{¶15}** Via Judgment Entry issued November 8, 2024, the trial court terminated Mother's parental rights, privileges, and obligations with respect to the Child, and granted permanent custody of the Child to SCJFS. The trial court also issued Findings of Fact and Conclusions of Law. Therein, the trial court found Mother had abandoned the Child by her failure to visit for a period of time exceeding ninety (90) days. The trial court also found Mother continuously and repeatedly failed to substantially remedy the conditions which caused the Child to be placed outside the home. The trial court further found granting permanent custody to SCJFS was in the Child's best interest. The trial court denied Mother's motion to extend temporary custody or, in the alternative, grant custody to a relative.

**{¶16}** It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY OF MINOR CHILD AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶17} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

{¶18} For ease of discussion, we shall address Mother's assignments of error together.

{¶19} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. (Citation omitted.) *In re D.R.*, 2024-Ohio-1819, ¶28 (5th Dist.). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will

not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, syllabus (1978).

**{¶20}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶21}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶22}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶23}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶24}** Mother challenges the trial court's finding the Child was abandoned and the trial court's finding the Child could not or should not be placed with Mother within a reasonable time, arguing she made progress on her case plan objectives and reunification was achievable.

**{¶25}** As set forth in our Statement of the Facts and Case, supra, the trial court terminated Mother's visitation with the Child on November 1, 2023, and Mother had not had any contact with the Child since the termination. The trial court reviewed its decision on two occasions while the case was pending, but did not reinstate Mother's visitation. Nor did Mother seek to have visitation reinstated. We find there was sufficient and substantial competent evidence to support the trial court's finding the Child was abandoned.

**{¶26}** Furthermore, Mother failed to substantially comply with her case plan. Mother completed a parenting assessment which recommended comprehensive mental health and substance abuse treatment, maintain stable employment and housing, complete drug and alcohol screens, and complete parenting classes through Goodwill. Mother began comprehensive mental health and substance abuse treatment with

CommQuest in April, 2023. Mother was discharged unsuccessfully in November, 2023, due to her lack of progress and her non-attendance. Mother began a second comprehensive mental health and substance abuse treatment program in March, 2024. Again, Mother was discharged unsuccessfully in July, 2024, due to her non-attendance. Mother did not comply with drug screens. Mother completed some random screens between February, and April, 2024, and one requested screen in July, 2024. Mother had not completed any screens since July 2024.

{¶27} Mother was also required to maintain stable employment and housing. Mother had six (6) different jobs in 2024. SCJFS could not verify her employment because Mother failed to provide the Agency with the appropriate documents. Mother was evicted in October, 2023. Mother failed to provide the Agency with any address or proof of housing. At the permanent custody hearing, she finally provided the trial court with an address.

{¶28} Mother was referred to Goodwill Parenting in the fall of 2023, however, she was unable to engage in the classes because she did not have visitation with the Child. Mother made no attempts to reinstate visitation in order to begin the classes.

{¶29} Based upon the foregoing, we find there was sufficient and substantial competent evidence to support the trial court's finding the Child could not be placed or should not be placed with Mother within a reasonable time.

{¶30} Mother further asserts SCJFS did not meet its burden, by clear and convincing evidence, to demonstrate permanent custody was in the best interest of the Child, and the trial court's best interest finding was against the manifest weight of the

evidence. Mother submits there were less restrictive means of securing the Child's safety without resorting to permanent custody.

{¶31} We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse-of-discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A trial court's failure to base its decision in consideration of the best interest of the child constitutes an abuse-of-discretion. *In re R.S.*, 2022-Ohio-4387, ¶ 45 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, at ¶ 60 (8th Dist.). "The term 'abuse-of-discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶32} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶33} We find there was clear and convincing evidence to support the trial court's best interest finding. Mother failed to make more than minimal progress on her case plan. The Child was healthy with no developmental concerns. The Child had been in the same

foster placement since the Child's initial removal on June 22, 2023. The placement is going well. The foster parents meet all of the Child's needs and are interested in adopting the Child. The GAL recommended permanent custody be granted to SCJFS and such was in the Child's best interest. The Child was not bonded with Mother. Mother had not visited the Child since November 1, 2023.

**{¶34}** Based upon the foregoing, we find the trial court's finding it was in the Child's best interests to grant permanent custody to SCJFS was not against the manifest weight of the evidence.

**{¶35}** Mother's first and second assignments of error are overruled.

**{¶36}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.