[Cite as *In re L.L.-B.*, 2025-Ohio-4644.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: L.L.-B. & B.B. | Case Nos. 2025CA0008 & 2025CA0009 |
| | <u>Opinion and Judgment Entry</u> |
| | Appeal from the Coshocton County Court of Common Pleas, Juvenile Division, Case Nos. 20233010 & 20223012 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: October 6, 2025 |

**BEFORE:** Craig R. Baldwin, William B. Hoffman, Robert G. Montgomery, Appellate Judges

**APPEARANCES:** Katelynn R. Davis, for Coshocton County JFS; Richard D. Hixson, for Mother, B.L., Jeanette Moll, Guardian ad Litem

OPINION

*Hoffman, J.*

**{¶1}** Appellant B.L. ("Mother") appeals the March 7, 2025 Judgment Entry entered by the Coshocton County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities with respect to her two (2) minor children ("Child 1" and "Child 2," individually; "the Children," collectively), and granted permanent custody of the Children to appellee Coshocton County Job and Family Services ("CCJFS" or "the Agency").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and B.B. ("Father") are the biological parents of the Children.[1] In addition to the Children at issue in the instant action, Mother has four (4) older children, to wit: N.H., R.H., L.B., P.B. (collectively, "the Siblings"). Mother has a history with CCJFS dating back to 2007. CCJFS's prior involvement was due to substantiated allegations of physical abuse of Mother's oldest children, substance abuse in the home, Mother's untreated mental health issues, domestic violence, and unsanitary home conditions.

**{¶3}** On March 30, 2022, CCJFS filed a complaint alleging Child 1 was dependent. Following an arraignment and pre-dispositional hearing on April 13, 2022, Child 1 was placed in the protective supervision of the Agency, but remained in the home with Mother. At the adjudicatory hearing on June 14, 2022, the trial court found Child 1 to be dependent. The trial court ordered Child 1 remain in the protective supervision of

---

[1] Father is not a party to this appeal.

CCJFS, but in the home with Mother. Child 1 was added to the existing case plan for the Siblings.

**{¶4}** On January 20, 2023, the Guardian ad Litem ("GAL"), Jeanette Moll, filed a motion for change of custody, requesting Child 1 be removed from Mother's custody and be placed in the temporary custody of CCJFS. Mother appeared for a review hearing on January 23, 2023. CCJFS reported concerns regarding Mother cancelling or no-showing for appointments, Mother's home again being cluttered, Mother's inability to manage Child 1 and the Siblings, reports of substance abuse, and Mother concealing her sixth pregnancy to the Agency.

**{¶5}** Child 2 was born on January 25, 2023. On February 14, 2023, CCJFS filed a complaint alleging Child 2 was dependent. The trial court conducted a hearing on February 14, 2023, to address a number of motions including, inter alia, the December 19, 2022 motion and January 31, 2023 amended motion for permanent custody involving L.B. and P.B. filed by the GAL, the January 20, 2023 motion for change of custody of Child 1 filed by the GAL, the February 3, 2023 motion for legal custody of N.H. and R.H. to Mother and termination of protective supervision filed by CCJFS, and the February 3, 2023 motion for legal custody of L.B. and P.B. to foster parents and termination of protective supervision filed by CCJFS. Based upon the evidence presented, the trial court removed Child 1 from Mother's custody and placed Child 1 in the temporary custody and protective supervision of CCJFS. The trial court placed Child 2 in the emergency temporary custody and protective supervision of CCJFS.[2]

---

[2] The orders resulting from the February 14, 2023 hearing relative to the Siblings are not relevant to the issues in this appeal.

**{¶6}** On March 1, 2023, CCJFS filed a motion for continued temporary custody and for a six-month extension of protective supervision as to Child 1. On March 2, 2023, Mother appeared for arraignment and pre-dispositional hearing relative to Child 2. The trial court continued Child 2 in the emergency temporary custody and protective supervision of CCJFS. The trial court conducted an adjudicatory hearing regarding Child 2 on March 15, 2023. Via Judgment Entry filed April 3, 2023, the trial court found Child 2 to be dependent. Mother filed a Notice of Appeal from the April 3, 2023 Judgment Entry to this Court, which affirmed the trial court's adjudicatory decision. *In re L.L.*, 2023-Ohio-3032 (5th Dist.).

**{¶7}** On September 29, 2023, Paternal Grandfather filed a motion to intervene and motion for custody, which the trial court denied following a hearing on October 5, 2023. The trial court conducted the dispositional hearing for Child 2 on October 6, 2023, and maintained temporary custody and protective supervision of Child 2 with CCJFS. CCJFS filed a motion for a six-month extension of temporary custody and protective supervision as to Child 1 on October 6, 2023, which the trial court granted via Judgment Entry filed November 27, 2023.

**{¶8}** On January 19, 2024, CCJFS filed a motion for a six-month extension of temporary custody and protective supervision as to Child 2. The trial court conducted an annual review hearing relative to Child 2 on February 7, 2024. Following the hearing, the trial court granted CCJFS's motion for a six-month extension. The trial court continued temporary custody and protective supervision of Child 2 with CCJFS.

**{¶9}** CCJFS filed motions for permanent custody of the Children on August 30, 2024. CCJFS filed an amended motion for permanent custody of Child 2 on September

24, 2024, to correct Child 2's surname. The trial court scheduled a hearing on the motions for October 31, 2024. The GAL filed her final report on September 24, 2024, recommending Child 1 and Child 2 be placed in the permanent custody of CCJFS.

{¶10} The following evidence was presented at the hearing:

{¶11} CCJFS ongoing caseworker Tiffany Fisher was assigned to the family from April 12, 2021, through August 1, 2023, when she left the Agency. Fisher stated the original concerns which led to CCJFS's involvement were Mother's mental health, her emotional stability, her inability to take responsibility for her negative actions and parental shortcomings, financial instability, and the conditions of the home.

{¶12} Fisher detailed Mother's case plan which required her to complete a mental health assessment through Ohio Family Counseling and Consultation and follow all recommendations, engage in an education program at First Step Domestic Violence Shelter, complete parenting classes, complete a psychological evaluation with Dr. Gary Wolfgang, undergo drug and alcohol treatment, submit to announced and unannounced drug screens, maintain safe and stable housing, and obtain and maintain stable employment. Although Mother made some progress on her case plan, Mother did not make significant changes in her life and did not alleviate the concerns which led to CCJFS's initial involvement.

{¶13} Mother's mental health continued to be a concern. In addition, concerns remained regarding the condition of the home, Mother's ability to manage all of her children, and Mother's inability to maintain stable employment. Fisher noted the two oldest siblings were reunified with Mother in January, 2022, and the two other siblings were reunified in October, 2022. Fisher added Mother was unable to handle the stress

of the reunification and the Siblings were removed again. Fisher reiterated Mother was never able to achieve consistent, long-term mental health stability.

{¶14} Erin Heard, a former intake worker and supervisor with CCJFS, testified CCJFS filed the complaint relative to Child 1 based upon the conditions with the Siblings and initially sought and obtained protective supervision. However, on February 13, 2023, Heard was notified by the on-call worker Mother and N.H. had an argument while driving in the car because Mother blamed N.H. for the GAL seeking removal of the Children. Mother kicked N.H. out of the car. After three (3) hours, Heard finally made contact with Mother. Heard described Mother as "very emotional" and "very distraught." October 31, 2024 Transcript of Proceedings, p. 73. Mother acknowledged she was not doing well emotionally, but refused a safety plan for the Children and the Siblings. The following day, February 14, 2023, the trial court ordered Child 1 be placed in the temporary custody of CCJFS and Child 2 be placed in the emergency temporary custody of CCJFS.

{¶15} Heard confirmed Fisher's testimony regarding CCJFS's ongoing concerns regarding Mother's ability to parent all six (6) of her children, her emotion regulation, her relationship with Father, her telling the Siblings to lie to emergency workers and school personnel, and the condition of the home. Heard explained, although Mother could express what she needed to do, she was unable to maintain or make significant progress towards the necessary case plan goals.

{¶16} Dr. Gary Wolfgang, a licensed psychologist, conducted a psychological evaluation of Mother. Dr. Wolfang diagnosed Mother with borderline personality disorder, generalized anxiety disorder, bipolar disorder (as a provisional diagnosis), hoarding disorder, cannabis use disorder, and methamphetamine use disorder. Dr.

Wolfgang indicated Mother would need long term psychotherapy and dialectic therapy to successfully manage her mental health issues. Mother admitted not taking medication for her mental health issues when such was prescribed in the past. Dr. Wolfgang noted Mother was unable to manage her emotions and the onset of negative emotions would cause her to lose the ability to monitor the environment around her. Dr. Wolfgang opined it was unlikely Mother would leave an abusive relationship even for the protection of her children.

{¶17} Sarah Lusk with Family and Children First Council supervised visits between Mother and the Children. Lusk also provided Mother with parent coaching. Due to Mother's inconsistent progress during her supervised visits, Mother was never afforded unsupervised visits. Lusk expressed concerns regarding Mother's ability to manage the Children and engage in age-appropriate activities with them. Mother struggled with positive redirection. Mother's emotional instability impacted Child 1 and Child 2. Although Mother could identify her parenting shortcomings, she lacked the ability to self-correct. Lusk noted the parenting concerns presented three (3) years earlier remained unresolved. Lusk added, in the two (2) months prior to the permanent custody hearing, Mother's ability to regulate her emotions and parent was declining. During a recent two-hour visit, Child 2 spent 72 minutes strapped in a high chair. Mother spent over 20 minutes on her phone. Lusk did not observe a bond between the Children and Mother. The Children did not look to Mother to meet their needs.

{¶18} Lexi Thompson, the CCJFS ongoing caseworker at the time of the permanent custody hearing, offered testimony which corroborated that of Tiffany Fisher and Erin Heard. Thompson reiterated the concerns which led to CCJFS's involvement

remained constant and unresolved.  While Mother engaged in case plan services, Mother made little to no progress over the course of the case and failed to resolve the issues. Mother admitted the domestic violence issues involving Father were unresolved. Nonetheless, Mother spent a significant amount of time with Father.  Father was not permitted to be around the Children. The Children are doing well in their current placement and are bonded with their foster family.

{¶19} The GAL filed her written report and recommendations on September 24, 2024, and testified at the hearing. She was initially appointed in April, 2021, as guardian ad litem for the Siblings, and was currently the guardian ad litem of the Children. The GAL recommended granting permanent custody of the Children to CCJFS. The GAL explained her recommendation was based upon Mother's lack of progress on her case plan as well as her failure to alleviate the concerns which led to the initial removal of the Children.  The GAL added Mother's mental health and behaviors were becoming more alarming with Mother claiming the GAL was stalking her.   Mother lacked responsibility and accountability and was dishonest throughout the case.  The GAL observed the Children with their foster family, noting the Children are doing well and are bonded with their foster parents.   The GAL believed granting permanent custody was in the Children's best interest.

{¶20} Mother offered the testimony of Tosha Crowthers from Coshocton Recovery.  Crowthers stated she has been counseling Mother since December, 2023. Mother was involved with intensive outpatient services and providing negative drug screen.  Crowthers provided Mother with services solely for her substance use issues.

**{¶21}** Caedyn Dawson, a therapist with ANEW Behavioral Health, testified Mother was receiving cognitive behavioral therapy and emotional regulation at ANEW since April, 2023. Dawson is working with Mother to address her attention deficit and hyperactivity disorder as well as her anxiety. Dawson believed Mother was making progress, and was coping and emotionally regulating.

**{¶22}** Via Judgment Entry filed March 7, 2025, the trial court terminated Mother's parental rights with respect to the Children and granted permanent custody of the Children to CCJFS. The trial court found, pursuant to R.C. 2151.414(E)(1), "following the placement of the Children outside the Children's home and not withstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the Children to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the Child to be placed outside the Children's home." March 7, 2025 Judgment Entry at pp. 8-9, unpaginated. The trial court further found it was in the best interest of the Children to grant permanent custody to CCJFS as the Children had been in the temporary custody of CCJFS for twelve (12) months of a consecutive twenty-two (22) month period.

**{¶23}** It is from this judgment entry Mother appeals, raising the following assignment of error:

THE TRIAL COURT ERRED WHEN IT FOUND THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILDREN, AS SUCH A FINDING WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

**{¶24}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

**{¶25}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. (Citation omitted.) *In re D.R.*, 2024-Ohio-1819, ¶28 (5th Dist.). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, syllabus (1978).

**{¶26}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶27}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶29} Mother does not challenge the trial court's finding the Children had been in the temporary custody of CCJFS for 12 or more months of a consecutive 22-month period. Rather, Mother asserts CCJFS did not meet its burden, by clear and convincing evidence, to demonstrate permanent custody was in the best interest of the Children, and the trial court's best interest finding was against the manifest weight of the evidence.

{¶30} We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse-of-discretion. *In re D.A.*, 2010-Ohio-5618, ¶ 47 (8th Dist.). A trial court's failure to base its decision in consideration of the best interest of the child constitutes an abuse-of-discretion. *In re R.S.*, 2022-Ohio-4387, ¶ 45 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, at ¶ 60 (8th Dist.). "The term 'abuse-of-discretion' connotes more than an error

of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶31} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶32} We find there was clear and convincing evidence to support the trial court's best interest finding. With regard to R.C. 2151.414(D)(1)(a), the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, the evidence established the Children were together in the same foster and the placement was going well. The foster parents met all of the Children's needs. The Children were bonded with each other and their foster parents. Sarah Lusk who supervised visits with Mother and the Children at Family and Children First Council testified she did not observe a bond between the Children and Mother. The Children did not go to Mother to meet their needs.

{¶33} The evidence relative to R.C. 2151.414(D)(1)(c), the custodial history of the child, showed the Children were removed from Mother's care on February 14, 2023. At

the time of removal, Child 1 was fourteen (14) months old, and Child 2 was less than one (1) month old.  The Children remained in the Agency's custody throughout the course of the proceedings.

{¶34}  With respect to R.C. 2151.414(D)(1)(d), the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody, CCJFS was unsuccessful in its attempt to find kinship placement as no appropriate relatives were available.

{¶35}  Further, although the Children had been in the care of the Agency for over 18 months, Mother was still unable to provide an adequate permanent home due to the ongoing concerns.

{¶36}  Based upon the foregoing, we find the trial court's finding it was in the Children's best interest to grant permanent custody to CCJFS was not against the manifest weight of the evidence.

{¶37}  Mother's sole assignment of error is overruled.

**{¶38}** The judgment of the Coshocton County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to Appellant.


By: Hoffman, J.

Baldwin, P.J. and

Montgomery, J. concur